UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RYAN CHARLES DIEMOND,<br><br>                      Plaintiff,<br><br>v.<br><br>NOAH NAGY,<br><br>                      Defendant. | Case No. 23-12184<br>Honorable Robert J. White<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(ECF NO. 17)**

## I.   Introduction

Plaintiff Ryan Charles Diemond, a prisoner of the Michigan Department of Corrections (MDOC), filed a pro se civil rights action under 42 U.S.C. § 1983, alleging that Defendant Noah Nagy has failed to accommodate his medical conditions by denying him access to the prison's legal writer program.  ECF No. 1. The Honorable Robert J. White referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 23.  Nagy moves for summary judgment for failure to exhaust administrative remedies.  ECF No. 17.  For the reasons below, the Court **RECOMMENDS** that Nagy's motion be **DENIED**.

## II.     Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a

lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  To meet this requirement, an inmate must strictly comply with the grievance process provided by the prison. *Woodford*, 548 U.S. at 93-94.  But an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then § 1997e will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 643 (2016).

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  "But a prisoner countering a motion alleging failure to exhaust must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Parks v. Mich. Dep't of Corr.*, No. 2:20-cv-11673, 2021 WL 3533422, at *3 (E.D. Mich. May 17, 2021), *adopted*, 2021 WL 2820984 (E.D. Mich. July 7, 2021) (cleaned up).  Summary judgment based on failure to exhaust

administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006). "A district court should grant summary judgment only if defendant establishes that there is no genuine dispute of material fact that a plaintiff failed to exhaust." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (cleaned up).

**B.**

MDOC Policy Directive (PD) 03.02.130 has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances. ECF No. 17-2. The policy requires a prisoner to try to informally resolve the problem with the allegedly offending staff within two days of learning about the grievable issue, and then, within five days of those informal efforts, file with the grievance coordinator a Step I grievance about any unresolved issues. *Id.*, PageID.215-216, ¶¶ Q, W. The prisoner may then file a Step II grievance appeal within ten business days of receiving the Step I response or, if no response was received, within ten business days after the date the response was due. *Id.*, PageID.217, ¶ DD. The same schedule applies to a Step III appeal—it is due within ten business days of receiving the Step II response or, if no response was received, within ten business days after the date the

response was due. *Id.*, PageID.218, ¶ HH. Prisoners must appeal their grievances through Step III and wait until receipt of a Step III response, or until the response is past due, before suing.

Nagy submits a grievance report and supporting documents showing that Diemond pursued two relevant grievances through Step III: (1) SMT-23-03-0221-28A (SMT-221), received at Step III on April 20, 2023, and (2) IBC-22-07-1324-28B (IBC-1324), received at Step III on September 6, 2022.[1] ECF No. 17-3, PageID.223-253. While not disputing the timeliness of either grievance, Nagy argues that Diemond failed to name him in SMT-221 and thus did not exhaust that grievance. ECF No. 17, PageID.205. The Court rejects that argument.

True, Diemond's Step I grievance named no official in the portion of the form requiring the prisoner to "[s]tate problem clearly." ECF No. 17-3, PageID.239. But the PD does not specify the portion of the form on which the targets of the grievances must be named; it says only that the required

---

[1] In his amended complaint, Diemond included another grievance (RMI-14-07-158-5142) addressing his disabilities and his access to the legal writer program. ECF No. 13, PageID.138-151. Diemond filed this grievance when he was incarcerated at the Michigan Reformatory (RMI). *Id*. He pursued the grievance through Step III, and it was denied on its merits on August 11, 2015. *Id*. PageID.151. This grievance may be relevant for whether Diemond exhausted his administrative remedies, but Nagy does not address it in the motion.

information must be "confined to the form and not written on the back, sides, or margins of the form, or in the response area." ECF No. 17-2, PageID.215, ¶ S.  The required information includes the "[d]ates, times, places, and names of all those involved in the issue be grieved." *Id*.  When "it is obvious from the facts alleged in the grievance that the defendant was involved," the grievance will be found exhausted for that defendant.  *Savoie v. Oliver*, __ F.Supp.3d__, No. 2:23-CV-11357, 2024 WL 1758263, at *6 (E.D. Mich. Apr. 24, 2024) (cleaned up).

     Here, Diemond *did* name Nagy within the confines of the form in a manner that made it obvious that Deimond's grievance was against Nagy.  The Step I form starts by requiring the grievance to identify "[w]hat attempt did you make to resolve this issue prior to writing this grievance?"  ECF No. 17-3, PageID.239.  In that section, Diemond first wrote, "On 2-2-23, I spoke to Warden Nagy again as in the past," and then he named other officials to whom he complained.  *Id*.  Diemond's identification of Nagy in that section made obvious that Nagy was a target of his grievance.  PD required Diemond to try to "resolve the issue *with the staff member involved* within two business days after becoming aware of a grievable issue."  ECF No. 17-2, PageID.215, ¶ Q (emphasis added).  By naming Nagy as the main person he spoke to about the issue being grieved, Diemond obviously

meant that Nagy was involved in the issue.

Notably, SMT-221 was not rejected based on an allegation that Diemond named no official involved; rather, SMT-221 was rejected as duplicative. ECF No. 17-3, PageID.239-240. Nagy's post-hoc rationalization for rejecting SMT-221 lacks merit.

### C.

The next question is whether SMT-221 was properly rejected as duplicative of IBC-1324. Under the PD, a grievance may be rejected if it raises issues that are duplicative of those raised in another grievance. ECF No. 17-2, PageID.213. ¶ J. Nagy suggests that MDOC's rejection of SMT-221 as duplicative is dispositive. ECF No. 17, PageID.205-207. But the mere rejection of a grievance as duplicative by MDOC staff does not render the underlying claims unexhausted as a matter of law. *Reedy v. West*, No. CV 16-13876, 2017 WL 2888575, at *2 (E.D. Mich. May 22, 2017), *adopted*, 2017 WL 2880122 (E.D. Mich. July 6, 2017). In a motion for summary judgment, defendants must compare the issues in the grievances and "show that every reasonable juror would think the rejection was proper." *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016) (cleaned up). Nagy's motion made no comparison of SMT-221 and IBC-1324.

And the Court finds that SMT-221 was not duplicative. Grievances that relate to the same subject matter are not duplicates when "they concern different time periods, different individuals, and different conduct." *Burnett v. Walsh*, No. CV 18-11063, 2020 WL 3716555, at *4 (E.D. Mich. June 15, 2020), *adopted*, 2020 WL 3639564 (E.D. Mich. July 6, 2020); *Ashley v. Boayue*, No. CV 19-10484, 2020 WL 5985203, at *6 (E.D. Mich. Feb. 18, 2020), *adopted*, 2020 WL 4282198 (E.D. Mich. July 27, 2020). Diemond alleged in both IBC-1324 and SMT-221 that prison officials denied him reasonable accommodations and wrongfully denied him access to the legal writer program. ECF No. 17-3, PageID.239, 250-253. But SMT-221 and IBC-1324 differed as to the time periods, institutions, and people involved. *Id*.

Diemond filed IBC-1324 in July 2022, when he was incarcerated at Bellamy Creek Correctional Facility. ECF No. 17-3, PageID.250. He complained about a letter denying him access to the legal writer program, mentioned his attempts to resolve the issue with Librarian Sherman, and described a cease-and-desist letter sent to Chief Psychologist J. Athearn, MDOC-BCHS Supervisor V. Cullitts, IBC Warden Macauley, and MDOC Director H. Washington. *Id*.

Diemond filed SMT-221 in February 2023 after he was transferred to

Parnall Correctional Facility.  *Id.*, PageID.239.  He said that he attempted to resolve the issue with Nagy, PC King, AOW Price, AOW Lafave, SMT Warden Shaver, and Shaver's administrative assistant.  *Id*.  In this grievance, Diemond more succinctly explained that the denial of accommodations impacted his ability to file and exhaust prison grievances.  *Id*.

These differences prevent the Court from finding the grievances to be duplicates.  See *Annabel v. Campbell*, No. CV 20-11114, 2022 WL 6580974, at *8 (E.D. Mich. Jan. 4, 2022), *adopted,* 2022 WL 4553122 (E.D. Mich. Sept. 29, 2022) (explaining that grievances related to the same subject matter are not duplicates because one concerned an incident on a different date and involved an additional individual); *Burnett*, 2020 WL 3716555, at *4 ("Although the two Grievances relate to the same general subject matter—an alleged attack on Burnett—because they concern different time periods, different individuals, and different conduct, the Grievances were not "duplicates" of one another"); *Ashley*, 2020 WL 5985203, at *6 (holding that although grievances related to a request for special pants to accommodate a medical issue, they are not duplicates because they concerned different time periods, individuals, instructions, and conduct).

Even if SMT-221 were duplicative, Nagy's motion should be denied because the issues raised in the grievance would be non-grievable.  The PLRA requires prisoners to exhaust "available" remedies.  *Ross v. Blake*, 578 U.S. 632, 643 (2016).  When a grievance system "operates as a simple dead end…the inmate has no obligation to exhaust the remedy."  *Id.*  "[T]he same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 644.  In sum, prisoners "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *see also Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) ("The non-grievability of Owens's classification-related complaint through the grievance process makes that remedy unavailable under the PLRA, and thus he does not have to pursue that remedy to exhaust his claim.").

Here, after MDOC rejected the lengthy IBC-1324 as too vague, Diemond seemed to try to cure that defect by more succinctly describing his claim that he had been denied a reasonable accommodation for his disabilities and thus struggled to file grievances and court claims.  *Compare* ECF No. 17-3, PageID.250-253 *with id.*, PageID.239.  But MDOC skirted the substantive issue raised in SMT-221 by deeming it duplicative; it closed

the door on Diemond's effort to cure the defect raised in response to IBC-1324.

If Diemond is forevermore barred from grieving the alleged denial of reasonable accommodations because IBC-1324 was vague, then that issue is non-grievable for him. And in general, MDOC should not be allowed to reject grievances as duplicative of grievances that were never addressed on the merits—a machination that "thwart[s] inmates from taking advantage of a grievance process." *Ross*, 578 U.S. at 644.

III. **Conclusion**

For these reasons, the Court **RECOMMENDS** that defendant's motion be **DENIED** (ECF No. 17).

Dated: October 1, 2024

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

**NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And

only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 1, 2024.

> S/Davon Allen
> DAVON ALLEN
> Case Manager